MINUTE ENTRY
ROBY, M.J.
February 18, 2015

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RSUI INDEMNITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO:   12-2820** |
| **AMERICAN STATES INSURANCE COMPANY** | **SECTION: "I" (4)** |

### JUDGE KAREN WELLS ROBY, PRESIDING

LAW CLERK:                                        Brittany Nash
COURT REPORTER/RECORDER:           Toni Tusa

Appearances:        **Ryan Higgins** for Plaintiff.
                             **Catherine Giarrusso** for Defendant.

Motion of Plaintiff—RSUI Indemnity Company**: "Motion to Compel Responses to RSUI's Interrogatories and Request for Production of Documents (R. Doc. 78)**

Motion of Defendant— American States Insurance Company**: "Motion to Compel RSUI to Respond to Discovery" (R. Doc. 79)**

### ORDER

Before the Court are reciprocal motions to compel. Plaintiff, RSUI Indemnity Company ("RSUI"), filed a **Motion to Compel (R. Doc. 78)** on February 2, 2015, and Defendant, American States Insurance Company ("American"), filed a **Motion to Compel (R. Doc. 79)** on February 3, 2015. The motions are opposed. *See* R. Docs. 81, 80. The motion were heard for oral argument on Wednesday, February 18, 2015.

**MJSTAR: 00:38**

**I.     Background**

This action is a dispute between the excess and primary liability insurance carriers of a common insured. The excess insurer, RSUI, seeks to recover from the primary liability insurer, American States Insurance Company ("American"), the $2 million it paid as a result of American's alleged breach of the duty to defend the common insured, as more fully set out in the facts below.

**II.    Factual Summary**

An employee of the common insured, Ameraseal LLC ("Ameraseal"), was in a motor vehicle accident with Stacia Barrow in June 2010. Barrow's vehicle struck the rear of Ameraseal's vehicle as its employee made a left turn in front of Barrow, who was allegedly speeding. As a result of the accident, Barrow alleged that she suffered injury to her head, neck, pelvic, spine, arm and leg. She filed suit in state court against Amerseal, its employee, and American. American undertook the defense of Amerseal but did not notify RSUI of Barrow's claims against the common insured until about two weeks before the discovery deadline and about three months before the trial.

Barrow alleged brain and spinal injuries, and there was an indication that her speeding may have been a contributing cause of the accident. Despite the significant injuries alleged by Barrow and her possible contributory negligence, the defense counsel assigned by American allegedly did not take depositions of the plaintiff, her doctors, or attempt to obtain an independent medical examination. Furthermore, defense counsel allegedly failed to oppose the plaintiff's motion for summary judgment, which was granted by the state trial court.

Two weeks before the discovery deadline, American notified RSUI of Barrow's claim against Amerseal and informed them that the claim was worth only between $150,000 and

$500,000, which was well within American's policy limit. Shortly after, American retained new defense counsel in February 2012, a month before trial, who advised the insured that the value of the case exceeded the $1 million primary policy limit and that a jury verdict could exceed all excess coverage, which was $4 million. However, counsel advised the insured that American was unwilling to offer Barrow the policy limits at that time.

Subsequently, Barrow demanded $5 million, the combined policy limits of American and RSUI. American then settled with Barrow for its policy limit of $1 million and received a release of American of all claims and a release of Amerseal from liability of damages in excess of $5 million, the combined available insurance limits of American and RSUI. Thereafter, RSUI negotiated a further settlement with Barrow for $2 million for a full release of Amerseal from all liability. RSUI claims that it settled with Barrow for $2 million rather than intervene the eve before trial because it was left with no discovery from American to support the defense of Amerseal.

On November 26, 2012, RSUI, the excess insurance carrier, filed this action against American, the underlying carrier, as subrogee of the common insured, alleging bad faith failure to defend the common insured properly in the underlying suit by failing to investigate and to take appropriate defensive action that resulted in the increased settlement value of the case. The Court granted American's summary judgment motion against RSUI on November 13, 2013. *See* R. Doc. 42. The Court's opinion was appealed and the Fifth Circuit reversed and remanded the case. *See* R. Doc. 57.

Now before the Court are reciprocal motions to compel. RSUI seeks supplemental responses to its Third Set of Interrogatories and Requests for Production of Documents ("RFP"), which it propounded on November 14, 2014. Specifically, RSUI contends that American did not

provide adequate responses to Interrogatories Nos. 5 and 6, and RFP Nos. 10 and 27. American seeks the production of a complete copy of RSUI's claim file and defense file from the Barrow lawsuit.

### III.     Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The Court notes that the discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship."

Rule 33 states that "a party may serve on any other party no more than 25 written interrogatories." Fed. R. Civ. P. 33(a)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). The responding party "must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2).

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information . . . stored in any medium from which information can be obtained." Fed. R. Civ. P. 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." Fed. R. Civ. P. 34(b)(1)(A). "The party to whom the request is directed must respond in writing within 30 days after being served." Fed. R. Civ. P. 34(b)(2)(A). "For each item or category, the response must either state that inspection . . . will be permitted as requested or state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Although Rule 34 does not provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989).

IV.   **Analysis**

  A.   **RSUI's Motion to Compel**

RSUI contends that American should be ordered to provide supplemental response to Interrogatories No. 5 and No. 6, and RFP No. 10 and No. 27.

### 1. Interrogatories No. 5 and No. 6

Interrogatory No. 5 seeks the identity of all individuals that reviewed and approved American's response to RFP No. 2 of RSUI's Second Set of Interrogatories and Requests for Production, which sought the production of American's file handling guidelines. *See* R. Doc. 78-1. Interrogatory No. 6 seeks a description of American's efforts to identify documents responsive to RSUI's request for American's file handling guidelines. *Id.* at 4. RSUI contends that it seeks this information from American because American's response to its request for file handling guidelines stated that the guidelines did not exist. However, RSUI contends that American's staff counsel confirmed the existence of the guidelines when he testified during his deposition that the guidelines place responsibility and decision making authority on the claims department. *Id.* at 3.

In American's opposition, it argues that the requests are irrelevant and protected by the attorney-client privilege and work-product doctrine. American contends that it does not have file handling guidelines, but protocols for the suggested division of tasks between claims and staff legal. *See* R. Doc. 81, at 2. Nonetheless, American argues that it has agreed to produce the protocols subject to the parties' protective order. *Id.* American contends that the production of the protocols will essentially render Interrogatories Nos. 5 and 6 moot. *See id.*

American also argues that it stated in its response to Interrogatory No. 5 that its in-house counsel reviewed and approved its response. American contends that it did not give a name for its in-house counsel because the request is not relevant to any claim at issue in this suit. *Id.* Furthermore, American argues that its process to find responsive documents would be privileged

because it would require them to disclose communications between American and its in-house counsel. *Id.* at 3.

Attorney-client privilege under Louisiana law protects "a confidential communication between certain categories of individuals . . . made for the purpose of facilitating the rendition of professional legal services to the client." *Maldonado v. Kiewit Louisiana Co.*, 2012-1868 (La. App. 1 Cir. 5/30/14), 152 So. 3d 909, 927 (citing La.Code Evid. art. 506(B)), *reh'g denied* (Aug. 24, 2014), *reh'g denied* (Sept. 26, 2014). A confidential communication is a communication not intended to be disclosed to persons other than to those whom disclosure is made in furtherance of obtaining or rendering legal service. La. Code Evid. Art. 506(5)(a). As for the work-product doctrine, it shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor,* 329 U.S. 495 (1947); *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M.D. La. 1992). The doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client. It focuses only on materials assembled and brought into being in anticipation of litigation. *Piatkowski v. Abdon Callais Offshore, L.L.C.,* 2000 WL 1145825, at *2 (E.D. La. Aug. 11, 2000).

Here, the name of the attorney and the process American used to identify responsive documents is not subject to the protections of either attorney-client privilege or work-product doctrine. The name of the attorney is not classified as a confidential communications nor is it a material assembled and brought into being in anticipation of litigation. American's process in identifying responsive documents is also not privileged because RSUI does not seek the disclosure of the content of the communications made between American and its counsel, but the actions American took to search for the guidelines.

Additionally, the information sought in Interrogatories No. 5 and No. 6 are relevant and discoverable. Rule 37 provides recourse for parties who believe that their adversary has failed to disclose. RSUI's request for the name of the reviewing attorney and American's process of identifying responsive documents is for the purpose of determining whether a motion for sanctions is appropriate. Since the information sought is not privileged, the Court finds that Interrogatories No. 5 and No. 6 are subject to discovery and American's objection is overruled.

### 2. RFP No. 10

Request for Production No. 10 seeks all documents related to incentive programs and bonuses for staff counsel based on their handling of a claim or lawsuit. *See* R. Doc. 78-1, at 4. American objected to the request as overbroad and that it seeks information that is confidential, proprietary, and constitutes trade secrets. *Id.* Subject to its objections, American responded that it has an incentive program but the incentive program is not based on the handling of any particular case such as the one at issue. *Id.*

RSUI argues that it seeks the incentive program because it would demonstrate whether American failed to defend the common insured because staff counsel is rewarded for closing files early or spending minimal on defense costs such as experts, medical records, depositions and independent medical exams. *Id.* at 7. RSUI additionally argues that its request is not limited to incentive programs that only apply to the management of a particular case. *Id.*

In opposition, American contends that this claim is not a malpractice claim implicating staff counsel's acts or omissions in defending the Barrow lawsuit, therefore an incentive plan rewarding his acts or omissions is completely irrelevant. *See* R. Doc. 81, at 4-5. American represents that it has already responded to RSUI's request by stating that it does not have an incentive plan that is based on the results for a particular suit and that the incentive plan is based

on overall company performance and the individual's rating received by the individual employer. *Id.* at 5.

During oral argument, the Court inquired into whether counsel for RSUI had any information to substantiate its theory that the incentive plan may have encouraged American's counsel to not engage in the normal pretrial process. However, counsel for RSUI did not have any testimony from the deposition of American's staff counsel or any other evidence to support its theory. Therefore, American's objection to producing its incentive plan is sustained.

### 3. RFP No. 27

Request for Production No. 27 seeks the production of the complete personnel files for four individuals that were involved in the claims process for the case at issue. *See* R. Doc. 78-1, at 5. These individuals included Brent Colton, Casey Hougan, Jennifer Fox, and Alison Hood. *Id.* American responded to the request by objecting that the request is overbroad and that the personnel files are personal, confidential, and private. *Id.* Subject to the objection, American represented that no adverse employment action was taken against any of the listed employees as a result of handling the Barrow lawsuit. *Id.*

RSUI argues that it is entitled to the personnel files of the adjusters and supervisors assigned to the Barrow lawsuit because their claims handling is directly in dispute. *Id.* at 7. RSUI argues that the personnel files should reveal the experiences and training of the adjusted assigned to the Barrow lawsuit, and whether they had experience handling a case involving allegations of brain injury. *Id.* at 7-8. RSUI further contends that American has advised that two of the adjusters no longer work for American, and that RSUI is entitled to discover whether the Barrow lawsuit motivated their termination. *Id.* at 8.

In opposition, American argues that it is not required to produce personnel files because the files can contain sensitive and potentially embarrassing information. *See* R. Doc. 81, at 3 (citing *Williams v. Roy O. Martin Lumber Co., LLC*, No. 02-30401, 2002 WL 31319337, at *6 (5th Cir. 2002)). American argues that the Fifth Circuit and this Court have rejected the claim that a party has an inviolable right to rummage through personnel files. *Id.* Additionally, American argues that RSUI's request for the entire personnel file is not narrowly tailored and that it can get the information it seeks when it deposes the employees. *Id.* at 4.

During oral argument, counsel for RSUI explained that the personnel files of the claim adjusters are relevant because according to American's guidelines staff counsel is not able to make decisions without first obtaining authority from the claims department. RSUI argued that the adjusters' experiences and backgrounds are relevant to determining whether they were able to make prudent decisions during the Barrow lawsuit.

Counsel for American argued that there were only two adjusters that handled the claim during the litigation of the Barrow lawsuit. American contends that Jennifer Fox handled the file before the lawsuit and that Alison Hood was only a supervisor in the claims department and was not directly in contact with staff counsel.

The Court finds that the personnel files may contain relevant and highly probative information concerning the experiences and backgrounds of the adjusters who handled the claim with staff counsel during the Barrow lawsuit. Given the sensitive nature of personnel files, the Court orders an *in camera* review of Brent Colton's and Casey Hougan's personnel files and denies the request for the personnel files of Jennifer Fox and Alison Hood. Since Jennifer Fox was not on the file during the litigation, her personnel file is not relevant. The Court also finds that Alison Hood's personnel file is not relevant since she was not in contact with staff counsel,

but the Court notes that RSUI may re-urge its request for her file if it discovers information demonstrating that she played an integral role in the handling of the claim.

### B. American's Motion to Compel

American seeks the entire RSUI claims file for the Barrow lawsuit and a complete copy of RSUI's counsel's defense file. *See* R. Doc. 79-1, at 2. American argues that RSUI produced documents in response to its request, but the production was incomplete. *Id.* American contends that it seeks the claims file and defense file to fully develop its defense because its position is that Barrow would not have settled with RSUI for less than $2 million, regardless of American's actions. *Id.* at 4.

During oral argument, American acknowledged RSUI's production of the claims file and the defense file, and narrowed the issues before the Court to the two items it contends remain missing from the claims files:

   a) An RSUI claim note dated 2/21/12 states that its adjuster submitted a reserve and settlement authority request for $2.5 million, but the authority request and the response to it were not produced.

   b) RSUI's claim notes reference communications with reinsurers, but the communications were not produced

*Id.*

Regarding the reserve and settlement authority request, the Court asked during oral argument whether American specifically asked for it in a Request for Production or an Interrogatory. American argued that it did not specifically request the reserve and settlement authority request, but that it requested all documentation detailing all aspects of the investigation and evaluation of Barrow's claim in RFP No. 9. American contended that the reserve and settlement authority presumably contains an evaluation and should have been produced as responsive to that request.

Contrary to American's presumption, it is highly plausible that the reserve and settlement authority does not contain an evaluation but contains a reserve amount that RSUI thought the claim was worth at the time. Given the fact that American did not specifically propound an interrogatory asking RSUI to identify the reserve, the Court finds that the request for the claims file and the request for evaluations were too broad to render the absence of the reserve and settlement authority request as non-responsive. Thus, RSUI's objection is sustained as to the reserve and settlement authority.

Next, American contends that there are three claim notes referencing communications with reinsurers that do not have the communications appended to them. The claims notes state that "PN 3 & CNR," "PN4; PN5 and CNR," and "PN 6 & CNR" were sent to the reinsurers. During oral argument, counsel for RSUI did not know what the above acronyms or codes referenced but informed the Court that he asked his client to search for the missing communications. However, Counsel for RSUI further argued that it produced all of the non-privilege portions of the claims file.

Although counsel for RSUI represents that the whole claims file has been produced, it is clear that the communications to the reinsurers should be appended to the claims notes even if they were absent in the claims file. The claims notes indicate that RSUI sent the communications to the reinsurers to cover their losses, and if the communications are in the possession of the reinsurers, they are reasonably accessible to RSUI and are considered within RSUI's possession under Rule 37. Therefore, RSUI's objection is overruled and the Court orders RSUI to produce the communications referenced in the claims notes.

### C.     Cost and Attorney Fees

RSUI and American seek an award of attorney fees and reasonable expenses incurred with the filing of the two motions. Pursuant to Rule 37, if a party "fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions." Fed. R. Civ. P. 37(a)(3)(A); *S. U.S. Trade Ass'n v. Unidentified Parties*, No. CIV.A. 10-1669, 2012 WL 112238, at *2 (E.D. La. Jan. 11, 2012). If the motion is successful, the Court must require the party whose conduct necessitated the motion, the party or attorney advising that conduct, or both, to pay the movant's reasonable expenses, including attorney's fees, unless the conduct was substantially justified or other circumstances make an award of expenses unjust. *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1019 (5th Cir. 1981).

In considering the issue of attorney fees, the Court finds that attorney fees are not appropriate in this matter. RSUI and American's dispute regarding the production of the file handling guidelines can be attributable to an interpretation issue, and American's motion to compel was primarily resolved with RSUI's production of its claims file and defense file. Thus, attorney fees are not appropriate under these facts.

**V.** <u>Conclusion</u>

**IT IS ORDERED** that RSUI Indemnity Company's **Motion to Compel (R. Doc. 78)** is **GRANTED in part** and **DENIED in part.** It is **GRANTED** as to Interrogatories No. 5 and No. 6, and American is ordered to produce its responses Interrogatories No. 5 and No. 6 by **Wednesday, February 25, 2015**. The motion is **DENIED** as to Request for Production No. 10 and as to the production of the personnel files of Jennifer Fox and Alison Hood in Request for Production No. 27.

**IT IS FURTHER ORDERED** that the Court will conduct an in camera review of the personnel files of Brent Colton and Casey Hougan, which shall be produced to the undersigned by **Wednesday, February 25, 2015**.

**IT IS FURTHER ORDERED** that American States Insurance Company's **Motion to Compel (R. Doc. 79)** is **GRANTED in part** and **DENIED in part.** It is **GRANTED** as to the production of the communications referenced in the claims notes to the reinsurers, and it is **DENIED** as to the production of the reserve and settlement authority request. RSUI is ordered to produce the communications referenced in the claims notes by **Wednesday, February 25, 2015**.

New Orleans, Louisiana, this 23rd day of February 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**