UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RSUI INDEMNITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO:   12-2820** |
| **AMERICAN STATES INSURANCE COMPANY** | **SECTION: "I" (4)** |

### ORDER

Before the Court is Defendant, American States Insurance Company's ("American") **Second Motion to Compel RSUI to Respond to Discovery (R. Doc. 84)**, seeking information concerning RSUI's handling of (1) traumatic brain injury claims and (2) lawsuits against Tony Clayton and/or the law firm of Clayton Fruge Ward. American also seeks attorney fees and costs associated with bringing this motion. The motion is opposed. *See* R. Doc. 90. The motion was heard for oral argument on Wednesday, March 4, 2015.

### I.     Background

This action is a dispute between the excess and primary liability insurance carriers of a common insured. The excess insurer, RSUI Indemnity Company ("RSUI"), seeks to recover from the primary liability insurer, American, the $2 million it paid as a result of American's alleged breach of the duty to defend the common insured. In the underlying lawsuit, the plaintiff alleged that she suffered injury to her head, neck, pelvic, spine, arm and leg as a result of a motor vehicle collision with the common insured in June 2010. It has been indicated that the Plaintiff may have been speeding and contributorily negligent.

American undertook the defense of the common insured but did not notify RSUI of the plaintiff's claims against the common insured until about two weeks before the discovery deadline and about three months before the trial. Despite the significant injuries alleged by the plaintiff and her possible contributory negligence, American's counsel failed take depositions of

the plaintiff, her doctors, or attempt to obtain an independent medical examination. Also, American's counsel allegedly failed to oppose the plaintiff's motion for summary judgment, which was granted by the state trial court.

Subsequently, the plaintiff demanded $5 million, the combined policy limits of American and RSUI. American then settled for its policy limit of $1 million and received a release of American on all claims. Thereafter, RSUI negotiated a further settlement with the plaintiff for $2 million for a full release of the common insured from all liability. RSUI claims that it settled with the plaintiff for $2 million rather than intervene the eve before trial because it was left with no discovery from American to support the defense of the common insured.

On November 26, 2012, RSUI subrogated to the rights of the common insured filed this action against American alleging bad faith failure to defend by failing to investigate and to take appropriate defensive action. RSUI alleges that American's failure to defend resulted in the increased settlement value of the case.

In the instant motion, American argues that it propounded its Second Set of Interrogatories and Requests for Production of Documents seeking information from the last fifteen years concerning the manner in which RSUI has handled similar claims and claims against the firm that represented the injured plaintiff in the underlying lawsuit. *See* R. Doc. 84-1, at 2. American represents that RSUI responded to its requests but objected on the grounds that it was unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. *Id.* American now seeks a court order overruling RSUI's objections and compelling them to respond to Interrogatories Nos. 1-6.

**III.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The Court notes that the discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court."  *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir. 1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(C)(iii).

Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party in its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or

agent)." However, such materials may be discoverable when either allowed by Rule 26(b)(1), or when a party shows a "substantial need" for the information and that obtaining the information by another means would pose an "undue hardship."

Rule 33 states that "a party may serve on any other party no more than 25 written interrogatories." Fed. R. Civ. P. 33(a)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). The responding party "must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2).

### IV. <u>Analysis</u>

American argues that the manner in which RSUI has handled traumatic brain injury claims and has defended against the plaintiff's counsel—Michael Fruge, Tony Clayton, and the law firm Clayton Fruge Ward—are highly relevant. *See* R. Doc. 84-1, at 3. American contends that if RSUI has handled such claims similarly, this would support American's defense that its actions did not cause RSUI's settlement amount and that the settlement was appropriate given the severe injuries alleged, the able trial counsel, and the risk of a potentially higher trial verdict. *Id*.

During oral argument, counsel for American argued that he recently deposed RSUI's counsel in the underlying lawsuit, George Hebler, and he stated that he handled a similar case for RSUI with the same adjuster but managed the case differently. Counsel argued that he has a right to know how they handled similar claims and that the information cannot be obtained from another source. Counsel further asserted that the information sought is directly related to American's defense that RSUI could have taken over the defense of the common insured.

Counsel argued that RSUI's prior claims handling would demonstrate whether RSUI's defense of the common insured would have resulted in the same settlement amount.

In opposition, RSUI argues that American's claims handling, not RSUI's claims handling, is at issue in this case. *See* R. Doc. 90, at 5. RSUI contends that American, as the primary insurer, had the duty and the right to control the defense of the underlying lawsuit and failed to notify RSUI of its existence until shortly before the discovery deadline and trial. *Id*. RSUI contends that the information sought is irrelevant because American is the company that defended the lawsuit, and even if RSUI provided American with the information it would not justify any of American's failures in the defense of the underlying lawsuit. *Id*. at 6. RSUI argues that American's handling of the underlying lawsuit will be judged under the facts and circumstances of that case and not on how RSUI handled different brain injury claims from fifteen (15) years ago.

RSUI further argues that the request is unduly burdensome because it would require a massive undertaking to provide the information. *Id*. RSUI represents that the process to produce its past claims handling would require it to look at each brain injury claim in Louisiana for the last fifteen years because RSUI does not enter specific injury type into its data system. *Id*. at 5. RSUI estimates that it would take over a month to produce and may cost approximately $50,000 to $100,000 in consulting fees, employee time and other costs. *Id*.

The scope of discovery includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b). Furthermore "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Relevance is the threshold inquiry. If the discovery sought is not relevant to a claim or a defense, then it will not be discoverable.

Here, RSUI's prior lawsuits involving traumatic brain injuries or prior lawsuits against the law firm Clayton Fruge Ward are not relevant. RSUI's history of handling similar lawsuits does not negate any fault American may have in connection with the underlying lawsuit and is not probative of whether American's defense in the underlying lawsuit increased the settlement value of the claim. Even if RSUI would have undertaken the defense of the common insured, its history of handling similar lawsuits would not prove that RSUI would have handled the lawsuit the exact same as it has in the past. Additionally, whether American breached the duty to defend will be mostly likely demonstrated by expert testimony rather than by comparing RSUI's conduct in similar cases.

**V.  Conclusion**

Based on the foregoing,

**IT IS ORDERED** that American States Insurance Company's **Motion to Compel (R. Doc. 84)** is **DENIED.**

New Orleans, Louisiana, this 18th day of April 2015.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**