UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RSUI INDEMNITY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-2820** |
| **AMERICAN STATES INSURANCE COMPANY** | **SECTION I** |

## ORDER AND REASONS

Before the Court are: (1) a motion[1] for summary judgment concerning subrogation filed by defendant, American States Insurance Company ("ASIC"); (2) a motion[2] for partial summary judgment filed by ASIC as to claims by plaintiff, RSUI Indemnity Co. ("RSUI"), based on a legal malpractice theory; (3) a motion[3] for summary judgment filed by RSUI; (4) a motion[4] filed by ASIC to exclude attorney opinion testimony; (5) a motion[5] filed by ASIC to exclude RSUI's accident reconstruction expert; and (6) a motion[6] filed by RSUI to exclude ASIC's insurance expert. All motions are opposed and the matters are fully briefed and ripe for decision.

## BACKGROUND

The facts of this case are set forth at greater length in *RSUI Indemnity Co. v. American States Insurance Co.*, 768 F.3d 374 (5th Cir. 2014). Briefly, Ameraseal, L.L.C. ("Ameraseal") had a primary liability insurance policy with a $1,000,000 policy limit issued by ASIC and an excess

---

[1] R. Doc. No. 117.
[2] R. Doc. No. 116.
[3] R. Doc. No. 119.
[4] R. Doc. No. 114.
[5] R. Doc. No. 115.
[6] R. Doc. No. 118.

1

insurance policy with a $4,000,000 policy limit issued by RSUI. Lamar Thomas ("Thomas"), an Ameraseal employee, was involved in a vehicular accident with Stacia Barrow ("Barrow"). Barrow sued Thomas and Ameraseal ("the insureds"), as well as ASIC (but not RSUI) in Louisiana state court. Eventually, after providing a defense which RSUI criticizes as inadequate, ASIC settled with Barrow shortly before trial for the $1,000,000 policy limits in exchange for a release of Thomas and Ameraseal, the scope of which release is disputed. Shortly thereafter, RSUI settled with Barrow on behalf of the insureds for an additional $2,000,000, and it now pursues that amount from ASIC based on ASIC's alleged mishandling of the underlying case.

The Court granted summary judgment in favor of ASIC, which the Fifth Circuit reversed. *See* 768 F.3d at 381-82. The Fifth Circuit held that "under the circumstances of this case, where an excess carrier alleges that a primary insurer in bad faith breached its duty to defend a common insured properly and caused exposure of the insured to an increase in the settlement value of the case above the primary policy limit, which the excess insurer must then satisfy on the insured's behalf, the excess insurer has a subrogated cause of action against the primary insurer for any payment above what it otherwise would have been required to pay." *Id.* at 382. The Fifth Circuit remanded for further proceedings. The parties have now filed various dispositive and evidentiary motions in advance of the upcoming bench trial.

## DISCUSSION

I. **Motions for Summary Judgment**

A. **Standard of Law**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of

material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.     ASIC's Motion for Partial Summary Judgment Regarding Subrogation**

ASIC moves for summary judgment, contending that RSUI is subrogated to a nonexistent claim. It is undisputed that RSUI brings its claims against ASIC solely through subrogation to the

claims that joint insureds may have had against ASIC.[7] ASIC contends that because it obtained a full release of the insureds' personal liability, the insureds have no claim for damages against ASIC and, therefore RSUI is subrogated to a nonexistent claim.[8] RSUI opposes the motion, contending that (1) the Fifth Circuit rejected ASIC's argument on appeal and (2) ASIC did not adequately secure a release of liability for the insureds, so the insureds (and consequently RSUI) do have a viable claim against ASIC.[9]

ASIC's argument hinges on whether its settlement with Barrow for the primary policy limits fully released the insureds from any personal exposure to excess liability. The Fifth Circuit addressed this issue, which the parties briefed on appeal, and concluded that it is intertwined with the merits of RSUI's bad-faith claim:

> Similarly, American contends that its settlement with Barrow was a so-called *Gasquet* settlement under state law, which adequately protected the insured. RSUI disputes this assertion. We need not decide the proper characterization of the settlement under *Gasquet* because whether [ASIC] adequately protected the insured in the settlement goes to the merits of the bad faith claim, which the district court should be given the first opportunity to decide.

*RSUI Indem.*, 768 F.3d at 381 n.4 (citation omitted). The Fifth Circuit directed the Court to consider this issue in connection with the merits of RSUI's bad-faith claim on remand, and the Court will do so.[10] Accordingly, RSUI's motion for summary judgment based on subrogation should be denied.

---

[7] R. Doc. No. 1, at 8.

[8] R. Doc. No. 117-1, at 4-6.

[9] R. Doc. No. 129, at 2-12. As an alternative basis for denying summary judgment, RSUI also contends that the collateral source rule allows it to collect from ASIC the $2,000,000 it paid on behalf of the insureds. *See* R. Doc. No. 129, at 12-14. If necessary, the Court will address this legal question after full development of the facts at trial.

[10] It is prudent to deny ASIC's motion for summary judgment and reserve this question for resolution in light of a fully developed trial record regardless of whether the Fifth Circuit's holding strictly binds the Court to do so pursuant to the law of the case doctrine or the mandate rule, which the parties dispute. R. Doc. No. 129, at 2-7; R. Doc. No. 150, at 1-3.

**C.     ASIC's Motion for Partial Summary Judgment Regarding Malpractice**

ASIC moves for partial summary judgment dismissing RSUI's claims "to the extent they allege legal malpractice by ASIC's counsel."[11] ASIC cites *St. Paul Insurance Co. v. AFIA Worldwide Insurance Co.*, for the proposition that an excess insurer cannot bring a malpractice claim against an attorney appointed to represent the primary insurer. *See* 937 F.2d 274, 279 (5th Cir. 1991). Consequently, according to ASIC, RSUI cannot base its claims on the conduct of the in-house lawyer assigned by ASIC to handle the underlying litigation.[12] RSUI responds that it "is not asserting a legal malpractice claim, but rather a bad faith failure to properly defend a common insured," and that ASIC is responsible for bad-faith claims handling by its employees, including the in-house lawyer.[13]

The Fifth Circuit rejected ASIC's argument on appeal: "Finally, we reject American's argument that RSUI's claim is for legal malpractice, as RSUI clearly is asserting that American's claims handling was to blame for the defensive failures in the underlying case." *RSUI Indem.*, 768 F.3d at 381 n.4. ASIC "recognizes" this holding, but contends that the Fifth Circuit must have misunderstood the nature of RSUI's claims because discovery was incomplete when the case went up on appeal.[14] The Court is not persuaded; when the Fifth Circuit summarized the defensive failures alleged by RSUI, it listed the same actions that ASIC contends now contends are non-actionable except as malpractice. *See id.* at 377.[15] Therefore, it appears that the Fifth Circuit comprehended

---

[11]R. Doc. No. 116-1, at 2.
[12]R. Doc. No. 116-1, at 7-8.
[13]R. Doc. No. 130, at 1-2.
[14]R. Doc. No. 116-1, at 2.
[15]ASIC contends that "the Court must dismiss RSUI's [claims] regarding the following decisions of ASIC's counsel: Choosing not to oppose Barrow's motion for summary judgment; [d]eciding which, if any of Barrow's fact and expert witnesses to depose; [s]electing and

RSUI's contentions when that court held that "RSUI clearly is asserting that American's claims handling was to blame for the defensive failures in the underlying case." *Id.* at 381 n.4. ASIC's motion for partial summary judgment should be denied.[16]

### D.     RSUI's Motion for Summary Judgment

RSUI moves for summary judgment in its favor as to both liability and damages.[17] In its motion, RSUI recounts at length ASIC's alleged mishandling of the underlying case and, on the basis of that version of events, urges the Court to find as a matter of law that ASIC (1) breached a duty to the insureds; (2) did so in bad faith; and (3) caused RSUI to pay the entire $2,000,000 excess settlement amount.[18] ASIC opposes the motion and contends that genuine disputes of material fact as to all elements of RSUI's claim, as well as to damages, preclude summary judgment.[19]

The Court has reviewed the briefing and the summary judgment record. The Court heeds

---

retaining certain experts and not others; and [d]eciding whether and when to issue a subpoena to obtain Barrow's expert's 'raw data.'" R. Doc. No. 116-1, at 10 (formatting omitted). The Fifth Circuit described RSUI's contentions in similar terms: "RSUI's pleadings indicate that it believed American's improper defense included the failure to evaluate and investigate the claim adequately so as to develop a comparative [fault] defense, which was lost when the defense failed to oppose the summary judgment motion as to liability; the failure to investigate the plaintiff's medical history and background and obtain prior medical records in order to contest damages; the failure to depose Barrow prior to the summary judgment; the failure to depose the passenger in Thomas's car, even though he told American that he believed Thomas was not at fault; the failure to retain appropriate neurological experts or to arrange for an independent medical examination; and the failure to consult with liability experts." 768 F.3d at 377.

[16]Even if the Fifth Circuit's clear holding somehow does not bind the Court, the record as it presently stands does not support partial summary judgment in ASIC's favor. Although much of what was done (or not done) in the underlying case can be attributed to ASIC's in-house attorney, the Court will benefit from exploration at trial of ASIC's internal decisionmaking processes. *See, e.g.*, R. Doc. No. 119-8, at 2 (claim file stating that "Legal would recommend Claims have plaintiff be evaluated by a defense neuropsychologist to determine if a brain injury resulted from the accident.").

[17]R. Doc. No. 119.
[18]*See* R. Doc. No. 119-2.
[19]R. Doc. No. 124, at 2.

Fifth Circuit's decision in this case, which noted unresolved fact questions which are "grist for the mill of the factfinder." *RSUI Indem.*, 768 F.3d at 831 n.4. The record is replete with disputed facts supporting multiple conflicting inferences regarding, among other issues, the merits and valuation of the underlying state-court case, the appropriateness of ASIC's actions and inactions in defending the insureds, whether ASIC's conduct rises to the level of bad faith, the protections afforded to the insureds by ASIC's settlement with Barrow, and causation of RSUI's asserted damages. The Court must draw all reasonable inferences in favor of ASIC, the non-movant and, accordingly, RSUI's motion for summary judgment should be denied.

## II.     Evidentiary Motions

### A.     Standard of Law

The parties have filed three additional motions challenging the admissibility of various expert opinion testimony. Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

This matter is scheduled for a bench trial, which diminishes the need for the evidentiary protections of Rule 702 and *Daubert*. *See Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000) ("Most of the safeguards provided for in *Daubert* are not as essential in a case such as this where a district judge sits as the trier of fact in place of a jury."); *see also Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615

F.3d 321, 330 (5th Cir. 2010) (citing *Gibbs* as holding "that the importance of the trial court's gatekeeper role is significantly diminished in bench trials, as in this instance, because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence").

**B.     ASIC's Motion to Exclude Attorney Opinion Testimony**

ASIC moves to "exclude the opinion testimony of any attorney concerning what actions ASIC's counsel should have taken to defend the underlying lawsuit, including without limitation the opinion testimony of George Hebbler, Drew Eversberg, and Kelly Balfour," all of whom are attorneys.[20] ASIC clarifies that it does not seek to exclude fact testimony from these witnesses regarding their roles in the underlying litigation.[21] However, ASIC contends that none of these witnesses should be allowed to testify as attorneys "concerning their professional opinions regarding the actions ASIC's staff counsel, Brad Brumfield, purportedly should have taken to properly defend the Barrow case."[22] According to ASIC, such opinions are not helpful to the Court and were not disclosed in compliance with Rule 26 of the Federal Rules of Civil Procedure.[23] RSUI responds that Hebbler, Eversberg, and Balfour are not retained as expert witnesses subject to Rule 26, and they can offer relevant and helpful opinion testimony regarding claims-handling and defense issues

---

[20] R. Doc. No. 114-1, at 2.

[21] R. Doc. No. 114-1, at 2 n.1 ("ASIC is not seeking a ruling precluding Hebbler, Eversberg, and Balfour from testifying at all. All three attorneys are fact witnesses, as Hebbler represented RSUI in the underlying suit, Eversberg briefly represented ASIC and its insureds, and Balfour initially represented the plaintiff and also employed her at his law office.").

[22] R. Doc. No. 147, at 2 (emphasis omitted).

[23] R. Doc. No. 114-1, at 6-8. ASIC also contends that attorney opinions are irrelevant to anything other than a claim for malpractice, which RSUI has expressly disclaimed. R. Doc. No. 114-1, at 5-6. This is simply a variation on the same flawed argument that RSUI's claims based on the conduct of ASIC's attorney can only be cognizable as malpractice claims, which argument the Fifth Circuit rejected on appeal as explained above. *See* 768 F.3d at 381 n.4. Accordingly, the Court finds that opinion testimony from attorneys involved in the underlying case may be probative of RSUI's bad-faith claims.

involved in this case.[24]

With respect to Hebbler and Eversberg, ASIC's motion should be denied. Hebbler and Eversberg represented ASIC and RSUI, respectively, at various points during the underlying litigation.[25] As well as being fact witnesses, opinions they formed during the underlying litigation about the quality of ASIC's defense of the insureds are potentially relevant to explaining their own actions. Such opinions are also potentially relevant to other issues such as when ASIC was or should have been aware of the scope of Barrow's claims or purported deficiencies in its own defense of the insureds.[26]

ASIC further misapprehends Rule 26(a)(2)(B),[27] which requires a full expert report only from expert witnesses "retained or specially employed to provide expert testimony in the case or . . . whose duties as the party's employee regularly involve giving expert testimony." Neither circumstance appears to apply to Eversberg or Hebbler. Accordingly, their opinion testimony appears at this stage of the proceedings to be helpful and admissible. ASIC's motion as to Eversberg and Hebbler should be denied without prejudice to ASIC's right to object to specific opinion testimony at trial.[28]

---

[24] R. Doc. No. 127, at 2-4.

[25] R. Doc. No. 147, at 2.

[26] *See* R. Doc. No. 127-1, at 1 (claims file entry stating that "Drew [Eversberg] expressed concern that there was apparently almost no defensive legal action undertaken during the discovery period from the time in August 2011 when we got pltf's discovery responses asserting a Brain Injury claim and Low Back Spine issues until we deposed the plaintiff in mid December 2011, just prior to the close of discovery"). If RSUI intends to elicit opinions from Eversberg or Hebbler about the merits of *this* case, the Court can address that issue if it arises.

[27] R. Doc. No. 114-1, at 7.

[28] For the same reasons, opinion testimony from Michael Fruge, Barrow's attorney in the underlying case, appears at this time to be helpful and admissible. *See* R. Doc. No. 127, at 6; R. Doc. 147, at 5-6.

With respect to Balfour, however, the issue is less clear. Balfour "initially represented the plaintiff [Barrow] and also employed her at his law office."[29] As Balfour is an attorney, at his deposition RSUI apparently took the opportunity to "cross-examine[] [him] on his understanding of standard industry defense practices."[30] As Barrow's employer and as an attorney who initially represented her in the underlying litigation, Balfour may conceivably have formed opinions that are relevant to issues in this case. But RSUI has not yet connected Balfour's personal "understanding of standard industry defense practices" to the facts and issues of this case, or explained why RSUI should get a "freebie" expert simply because a fact witness in the case happens to have done similar work in the past. Accordingly, ASIC's motion as to Balfour should be denied without prejudice to ASIC's right to object to specific opinion testimony at trial.

## C.    ASIC's Motion to Exclude Joseph Blaschke

ASIC moves to exclude testimony from Joseph Blaschke, an accident reconstruction expert retained by RSUI.[31] According to ASIC, Blaschke should not be permitted to testify because he did not apply an accepted accident reconstruction methodology and because his testimony would not be helpful in understanding the underlying car accident.[32] RSUI responds that Blaschke was not retained to conduct a complete accident reconstruction; rather, he was retained to opine as to what he would have investigated had he been retained in the underlying case.[33] Therefore, RSUI contends, Blaschke's opinions are reliable and helpful with respect to whether ASIC abandoned a potentially

---

[29]R. Doc. No. 114-1, at 2 n.1.
[30]R. Doc. No. 127, at 4.
[31]R. Doc. No. 115-1, at 1.
[32]R. Doc. No. 115-1, at 5-8.
[33]R. Doc. No. 128, at 2-7.

10

viable comparative fault defense in the underlying case.[34]

Having reviewed the briefing and Blaschke's report, the Court concludes that ASIC's arguments are fertile grounds for cross-examination, but excluding his opinions entirely in advance of the upcoming bench trial is not warranted. As Blaschke explains in his report, he was instructed "to assume that [he] was requested to perform an analysis and reconstruction of this crash and inform [RSUI] of what information [he] would have requested and what actions [he] would have taken to perform these tasks."[35] Blaschke concludes in his report that "it is likely that this crash resulted from contributions (or errors) made by both drivers."[36]

Blaschke's opinions are potentially probative with respect to whether an accident reconstruction, had ASIC commissioned one, might have supported a comparative fault defense in the underlying case.[37] The Court will be in a better position at trial to assess the reliability and helpfulness of this testimony, and to determine if Blaschke goes too far by opining that "it is *likely* that this crash resulted from contributions (or errors) made by both drivers."[38] Much of the concern expressed by ASIC can be addressed through cross-examination. Accordingly, ASIC's motion to exclude Blaschke should be denied without prejudice to ASIC's right to object to specific opinion testimony at trial.

---

[34] R. Doc. No. 128, at 5, 8.
[35] R. Doc. No. 115-2, at 52.
[36] R. Doc. No. 115-2 at 54 (emphasis added).
[37] Although Blaschke states that he was asked to "assume that [he] was requested to perform an analysis and reconstruction of this crash and inform [RSUI] of what information [he] would have requested and what actions [he] would have taken to perform these tasks," R. Doc. No. 115-2, at 52, he obviously went further than that mandate in his report.
[38] R. Doc. No. 115-2 at 54 (emphasis added)

11

**D.     RSUI's Motion to Exclude John L. Saulino**

RSUI moves to exclude the expert testimony of John L. Saulino, an insurance expert retained by ASIC.[39] According to RSUI, Saulino does not apply any specialized knowledge or expertise regarding insurance industry standards, but rather selectively and conclusorily spins evidence in ASIC's favor to reach legal conclusions supported by nothing but his own conjecture.[40] RSUI cites an opinion of another U.S. District Court which excluded Saulino's opinion testimony regarding an insurer's good faith because his report was "replete with legal conclusions and speculations that ultimately render his entire report deficient" and "merely a restatement of certain evidence without any insight into the expert's own analysis or bases for his opinion."[41] *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (D.N.J. 2008). ASIC responds that these criticisms go to the weight of Saulino's testimony, not its admissibility, and that Saulino permissibly and reliably "addresses insurance custom and practice in claim handling and applies those customs and practices to the facts of the instant case."[42]

The Court has reviewed Saulino's report, which reads more like proposed findings of fact favorable to ASIC than an expert's reliable application of specialized knowledge to the facts of the case. Saulino cherry-picks evidence favorable to ASIC and dictates what inferences and legal conclusions the Court should draw from that evidence.[43] Discussion of applicable insurance industry

---

[39]R. Doc. No. 118-1, at 1.
[40]R. Doc. No. 118-1, at 7-11.
[41]R. Doc. No. 118-1, at 6.
[42]R. Doc. No. 123, at 1-2.
[43]For example, Saulino states that the question of the settlement value of the underlying case is "resolved, in my opinion, with the sworn testimony of the plaintiff Barrow's attorney, Michael Frugé," which Saulino then proceeds to summarize. R. Doc. No. 118-2, at 11-12. This conclusion is more advocacy than expert opinion.

12

standards is scant, and it is difficult to discern any meaningful methodology other than an overarching goal of justifying ASIC's conduct. The Court finds that Saulino's report is woefully deficient, for similar reasons articulated by the district court in *Holman Enterprises*.[44]

Nonetheless, because this is a bench trial and there is no risk of tainting a jury with presentation of Saulino's otherwise overwhelmingly inadmissible and unhelpful testimony, the Court will allow ASIC to call Saulino at trial and to attempt to elicit whatever admissible and helpful expert opinions, if any, he may be able to offer. For example, Saulino criticizes RSUI's insurance expert for purportedly holding ASIC to a standard of "best practices" exceeding what the insurance industry actually requires.[45] This opinion could conceivably help the Court assess disputed issues in this case. Accordingly, RSUI's motion with respect to Saulino should be denied without prejudice to RSUI's right to object to his testimony at trial. However, having evaluated Saulino's report, it is apparent to the Court that Saulino's misguided attempt to navigated outside of his proper lane may cause his admissible testimony to be suspect and viewed with caution.

For the foregoing reasons,

**IT IS ORDERED** that the motions related to expert opinion and testimony are **DENIED** without prejudice to any party's right to object to specific testimony at trial.

---

[44]The Court has compared Saulino's expert report in this case with his report in the *Holman Enterprises* case and finds that both share similar defects.

[45]R. Doc. No. 118-2, at 17.

**IT IS FURTHER ORDERED** that the motions for summary judgment or partial summary judgment are **DENIED**.

New Orleans, Louisiana, May 18, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**